UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————

№ 20-CV-4980 (MKB) (RER)

————————————

THE ANNUITY, WELFARE AND APPRENTICESHIP SKILL IMPROVEMENT & SAFETY FUNDS OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 15, 15A, 15C & 15D, AFL-CIO *BY THEIR TRUSTEES, ET AL*,

                                                  Plaintiffs,

vs

GENRUS CORPORATION,

                                                  Defendant.

————————————

**REPORT & RECOMMENDATION**

August 16, 2021

————————————

**to the Honorable Margo K. Brodie,
United States District Judge**

**RAMON E. REYES, JR., U.S.M.J.:**

    This is an action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132, 1145, and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185. (Dkt. No. 1 ("Compl.") ¶¶ 1, 28–32). Defendant Genrus Corporation ("Genrus" or "Defendant") has failed to answer or otherwise respond to the Complaint. (*See* Dkt. No. 8). Accordingly, plaintiffs—the Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the International Union of Operating Engineers, Local 15, 15A, 15C & 15D, AFL-CIO ("the Funds") by their Trustees James T. Callahan, Thomas A. Callahan, Michael Salgo, and William Tyson; Central Pension Fund of the

1

International Union of Operating Engineers ("CPF"), by its Chief Executive Officer Michael A. Crabtree; and the International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO ("the Union"), by its President & Business Manager Thomas A. Callahan (collectively, "Plaintiffs")—have moved for default judgment. (Dkt. Nos. 9–14). Your Honor has referred that motion to me for a report and recommendation. (Order dated 4/20/2021).

Upon careful review of the submissions, as analyzed below, I respectfully recommend that Your Honor grant Plaintiffs' motion for default judgment and award $51,148.42 consisting of: (1) $30,374.79 in unpaid contributions; (2) $12,326.60 in pre-judgment interest; (3) $3,423.03 in liquidated damages; (4) $2,535 in attorney's fees; (5) $489 in costs; and (6) $2,000 in auditor's fees. Plaintiffs should also be awarded additional pre-judgment interest calculated through the date that the Clerk of Court enters final judgment and post-judgment interest on all sums awarded from the date judgment is entered to the date of payment.

## **BACKGROUND**

The Union is a labor organization as defined in Section 2 of the LMRA. (Compl. ¶ 13; Dkt. No. 10 ("Callahan Aff.") ¶ 2).[1] The Funds and CPF are multi-employer/employee benefit plans within the meaning of Sections 3(3) and 3(37) of ERISA. (Compl. ¶¶ 8, 12). CPF is a joint trustee fund established pursuant to Section 302 of the LMRA and is an employee pension benefit plan within the meaning of Section 3(2) of ERISA. (*Id.* ¶¶ 9, 11).

At all relevant times, Genrus and the Union were parties to a collective bargaining agreement ("CBA"). (Compl. ¶ 19; Callahan Aff. ¶ 4; Dkt. No. 13-2 ("Ex. B") ¶ 1). Genrus is also bound to

---

[1] Thomas A. Callahan is the President & Business Manager for the Union as well as a member of the Board of Trustees for the Funds. (Callahan Aff. ¶ 1).

a series of association agreements negotiated by the Union with the General Contractors Association of New York, Inc, as well as an Agreement and Declaration of Trust ("Trust Agreement") with each Fund. (Dkt. No. 14 ("Pls.' Mem.") at 2; *see* Dkt. No. 13-3; Dkt. Nos. 13-4 through 13-7 ("Exs. D–G")). Pursuant to the CBA, Genrus was obligated to make certain contributions to the Funds and CPF,[2] as well as supplemental union dues and political action committee ("PAC") payments to the Union, based on work performed by covered employees. (Compl. ¶¶ 20–21; Dkt. No. 13-3 ("Ex. C") art. XI, § B(1)–(9); *see also* Exs. D–G).

Genrus consented to an audit of its books and records in February 2020 ("the Audit"). (Compl. ¶ 23; Pls.' Mem. at 3). The Audit revealed that Genrus had failed to make certain contributions to the Funds, CPF, and the Union for the period of July 1, 2014 through June 30, 2016. (Compl. ¶ 23; Dkt. No. 12 ("Chase Aff.") ¶ 6; Dkt. No. 13-8 ("Ex. H")).[3] A revised audit report issued on or about September 21, 2020, detailed the results of the Audit. (Compl. ¶ 24).

Plaintiffs brought suit on October 16, 2020, at which point Genrus had not cured its failure to pay the amounts owed.[4] (Compl. ¶¶ 25–26, 30). When Genrus failed to answer or otherwise respond to the complaint, the Clerk of the Court entered default against it. (Dkt. No. 8).

---

[2] In 2000, the Local 15 Pension Fund merged into CPF; however, none of the relevant agreements were amended to reflect the merger. (Callahan Aff. ¶ 6; Pls.' Mem. at 5). Nonetheless, the Court infers that Genrus was required to continue making applicable contributions to CPF. *See Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Local 15, 15A, 15C & 15D v. Barbella Env't Tech., Inc.*, No. 17-CV-4397 (CBA) (RLM), 2018 WL 4403393, at *3 (E.D.N.Y. Mar. 1, 2018) (inferring that defendant was required to make contributions to CPF because "plaintiffs are entitled to all reasonable inferences from the evidence they offer"), *adopted by* 2018 WL 4388451 (Sept. 14, 2018); *The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Engineers, Local 15, 15A, 15C & 15D v. Coastal Env't Grp. Inc.*, No. 18-CV-5791 (LDH) (SJB), 2019 WL 5693916, *5 n.9 (E.D.N.Y. Aug. 30, 2019), *R. & R. adopted* (March 31, 2020).

[3] Catherine Chase ("Chase") is the day-to-day administrator for the Funds. (Chase Aff. ¶ 1).

[4] The case was initially referred to arbitration pursuant to this District's compulsory arbitration. (Dkt. No. 6); *see also* LOCAL. CIV. R. 83.7(d).

Plaintiffs subsequently moved for default judgment on December 3, 2020. (Dkt. Nos. 9–14). Genrus had not made any payments when Plaintiffs filed their motion. (Pls.' Mem. at 4; Chase Aff. ¶ 9). Your Honor referred the motion to me for a report and recommendation. (Order dated 4/20/2021).

## DISCUSSION

### I. Standard of Review for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for default judgments. *Gesualdi v. Seacoast Petrol.*, 97 F. Supp. 3d 87, 95 (E.D.N.Y. 2015). First, when a plaintiff shows that a defendant has failed to plead or otherwise respond to the complaint, the Clerk of the Court must enter a non-appearing party's default. FED. R. CIV. P. 55(a). Following entry of default, the plaintiff must apply to the court for default judgment. FED. R. CIV. P. 55(b).

In general, a party's default is accepted as admission of all well-pleaded factual allegations. *Div. 1181 Amalgamated Transit Union—N.Y. Employees Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 605 (E.D.N.Y. 2017). Allegations as to liability are deemed true; however, the court must ensure that those allegations establish the defaulting party's liability as a matter of law. *Id.* at 605, 611 (collecting cases) ("[C]onclusory allegations, without more, are insufficient to establish liability."); *Bricklayers & Allied Craftworkers Local 2, Albany Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).

### II. ERISA Liability

I have carefully reviewed the Complaint and the Trustees's submissions in support of their motion for a default judgment. (Dkt. Nos. 1, 9–14). Those submissions establish Genrus's liability under section 515 of ERISA and section 301 of the LMRA.

4

Section 515 of ERISA states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Section 301 of the LMRA provides federal jurisdiction for suits involving the "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a).

The Trustees allege that Genrus, an employer in an industry affecting commerce, was bound by a CBA and associated Trust Agreements under which Genrus was obligated to make various ERISA and non-ERISA contributions, and that it failed to make such contributions. (Compl. ¶¶ 18–21, 24–26, 28–30; Pls.' Mem. at 6–7; Exs. D–G). Genrus' actions, which are deemed admitted, thus violate 29 U.S.C. § 1145 and 29 U.S.C. § 185(a). *See, e.g.*, *Coastal Env't*, 2019 WL 5693916, at *5; *Trs. of the Loc. 813 Ins. Tr. Fund v. A.A. Danzo Sanitation, Inc.,* No. 16-CV-318 (SJ) (SJB), 2018 WL 4268907, at *3–4 (E.D.N.Y. Aug. 8, 2018), *adopted by* 2018 WL 4266038 (Sept. 5, 2018); *Sullivan v. Marble Unique Corp.*, No. 10-CV-3582 (NGG) (LB), 2011 WL 5401987, at *3 (E.D.N.Y. Aug. 30, 2011), *adopted by* 2011 WL 5402898 (Nov. 4, 2011); *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) (adopting R. & R.).

Accordingly, I respectfully recommend that default judgment be entered against Genrus.

**III.   Damages**

Courts award prevailing ERISA and LMRA plaintiffs: (1) the unpaid contributions, (2) interest, (3) an amount equal to the greater of interest or liquidated damages, (4) reasonable legal costs and attorney's fees, and (5) "any legal or equitable relief as the court deems appropriate," including auditor's fees. § 1132(g)(2); *Mason Tenders Dist. Council v. Aurash Const. Corp.*, No.

5

04 Civ. 2427 (RCC), 2006 WL 647884, at *1–4 (S.D.N.Y. Mar. 15, 2006); (*see also* Exs. D–G). However, a judgment of liability does not automatically entail award of damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Instead, the court must make an individual assessment. *Daniello v. Planned Sys. Integration*, 07-CV-1729 (RREM) (VVP), 2009 U.S. Dist. LEXIS 132835, at *8 (E.D.N.Y. June 25, 2009), *adopted by* 2009 U.S. Dist. LEXIS 61387 (July 16, 2009). Further, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c).

Courts have discretion to award damages after a hearing or based on submitted records. *See* FED. R. CIV. P. 55(b)(2); *Cement and Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.,* 699 F.3d 230, 234 (2d Cir. 2012). The records must allow a court to determine the damages owed to a "reasonable certainty." *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) (citing *Credit Lyonnais Secs. Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)) (finding two declarations, a copy of the collective bargaining agreement, a letter of assent executed by defendant, tabulation of contributions due from defendant, and documentation of attorney's fees and costs a sufficient basis to determine damages).

Plaintiffs submitted the following documents in support of damages: (1) affidavit of the President & Business Manager for the Union as well as a member of the Board of Trustees for the Funds, (Callahan Aff.); (2) affidavit of the payroll audit manager for the Audit, (Dkt. No. 11 ("Madeiras Aff."));[5] (3) affidavit of the Funds' Administrator, (Chase Aff.); (4) affidavit of Plaintiffs' counsel, (Dkt. No. 13 ("Steinberg Aff.")); (5) CBA and relevant association agreement, (Exs. B–C); (6) Trust Agreements and amendments, (Exs. D–G); (7) wage scale schedule, (Dkt.

---

[5] Lisa Madeiras ("Madeiras") is a payroll audit manager for the accounting firm of Schultheis & Panettieri, LLP, a certified public accounting firm, which conducted the Audit on behalf of Plaintiffs. (Madeiras ¶ 1; *see* Chase Aff. ¶ 5).

6

No. 13-9 ("Ex. I")); and (8) documentation of attorney's fees, auditor's fees, and costs, (Ex. H; Dkt. Nos. 13-10 through 13-12 ("Exs. J–L")). The detailed affidavits Plaintiffs submitted provide a sufficient basis upon which to determine damages to a reasonable certainty.

A. Unpaid Contributions

The Trust Agreements empowered Plaintiffs to bring an action compelling a delinquent employer to remit owed contributions. (Ex. D., art. V, §§ 2, 6 (amend. dated 3/13/2014); Ex. E, art. VII, §§ 1–2; Ex. F, art. V, §§ 2, 6 (amend. dated 3/13/2014); Ex. G, art. IV, § 4.3).

The Audit revealed that Genrus owed $28,240.63 in unpaid ERISA contributions and $2,134.16 in unpaid non-ERISA contributions. (Ex. H; Pls.' Mem. at 9, 15; Madeiras Aff. ¶ 5). I have carefully reviewed the audit materials, as well as the explanations provided by Madeiras, Chase, and Steinberg.[6] Thus, I respectfully recommend that Plaintiffs be awarded $30,374.79.

B. Pre-Judgment Interest

ERISA mandates that interest on unpaid contributions be calculated by the rate provided under the plan, if it exists. § 1132(g)(2). Pursuant to the Trust Agreements for the Annuity, Welfare (including medical reimbursement account ("MRA") and vacation benefits), and Apprentice Funds, interest accrues at the rate of six percent per annum. (Ex. D art. V, § 6 (amend. dated 3/13/2014); Ex. E art. VII, § 8 (amend. dated 3/13/2014); Ex. F art. V, § 6 (amend. dated

---

[6] Taking the audited and redeemed hours identified in the Audit as given, there are minor inconsistencies in the audit report. For example, the Wage Scale Schedule lists the Vacation Fund rates for the period starting July 1, 2014 as $3.55 for regular hours and $7.10 for double time hours, (Ex. I at 11); however, the Audit report lists them at $3.5 and $7, respectively, (Ex. H at 3). Similarly, the Wage Scale Schedule lists the Vacation Fund rates for the period starting July 1, 2015 as $3.80 for regular hours and $7.60 for double time hours, (Ex. I at 26); however, the Audit report lists them at $3.75 and $7.50, respectively, (Ex. H at 4). Because the amounts requested fall below the amount Plaintiffs would have been awarded applying the rates set forth in the Wage Schedule, I find it appropriate to award the requested amounts.

3/13/2014)). Interest under the CPF Trust Agreement accrues at the rate of nine percent per annum. (Ex. G art. IV, § 4.5(c)). For non-ERISA contributions, interest may be calculated at nine percent per annum. *See* N.Y. C.P.L.R. § 5004; (*see also* Pls.' Mem. at 9).

As of the date of this Report and Recommendation, total interest for ERISA contributions amounts to $11,149.95,[7] and total interest for non-ERISA contributions amounts to $1,178.23.[8] Accordingly, I respectfully recommend that Plaintiffs be awarded $12,326.60 in interest through the date of this Report and Recommendation plus additional interest calculated through the date that the Clerk of Court enters final judgment at the per diem rate of $5.66.[9]

C.  Liquidated Damages

Pursuant to ERISA, Plaintiffs are also entitled to an amount equal to the greater of: (1) interest on the unpaid ERISA contributions; or (2) liquidated damages provided for under the plan that is not greater than twenty percent of the unpaid ERISA contributions. 29 U.S.C. § 1132(g)(2)(C).

Under the Trust Agreements for the Annuity, Welfare, and Apprentice Funds, Plaintiffs are entitled to "liquidated damages equal to ten percent . . . of the amount owed in contributions." (Ex.

---

[7] The Court applied the reasonable intermediate date of June 30, 2015 for the period starting July 1, 2014 and the date of June 30, 2016 for the period starting July 1, 2015. (*See* Madeiras Aff. ¶ 6).

Pension Fund Interest = [(number of days from 6/30/2015 through 8/16/2021) x .09/365 x $4,944.28] + [(number of days from 6/30/2016 through 8/16/2021) x .09/365 x $1,045.35]

Remaining Funds Interest = [(number of days from 6/30/2015 through 8/16/2021) x .06/365 x $17,976] + [(number of days from 6/30/2016 through 8/16/2021) x .06/365 x $4,275]

[8] [number of days from 7/1/2015 through 8/16/2021] x .09/365 x $2,134.16

[9] Daily interest rate for Pension Fund = [09/365 x $4,944.28] + [.09/365 x $1,045.35] = $1.48

Daily interest rate for Remaining Funds = [.06/365 x $17,976] + [(.06/365 x $4,275] = $3.65

Daily interest rate for non-ERISA contributions = [.09/365 x $2,134.16] = $0.53

D art. V, § 6 (amend. dated 3/13/2014); Ex. E art. VII, § 8 (amend. dated 3/13/2014); Ex. F art. V, § 6 (amend. dated 3/13/2014)). The CPF Trust Agreement provides that liquidated damages may be assessed in an amount up to twenty percent of the deficiency. (Ex. G art. IV, § 4.5(b)). Thus, total liquidated damages amounts to $3,423.03.[10] This amount is less than twenty percent of the unpaid ERISA contributions[11] and less than the interest owed on unpaid ERISA contributions.

Plaintiffs request only liquidated damages, and not the greater amount equal to interest on unpaid ERISA contributions. (Dkt. No. 9-1; Pls.' Mem. at 10). Accordingly, I respectfully recommend that Plaintiffs be awarded $3,423.03 in liquidated damages.

D.  Attorney's Fees

ERISA further obligates a delinquent employer to pay "reasonable attorney's fees and costs of the action." § 1132(g)(2)(D); (*see also* Ex. D art. V, § 6 (amend. dated 3/13/2014); Ex. E art. VII, § 8 (amend. dated 3/13/2014); Ex. F art. V, § 6 (amend. dated 3/13/2014); Ex. G. art. IV, § 4.5(e)). A reasonable attorney's fee is "what a reasonable, paying client would be willing to pay." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). A reasonable fee is calculated by multiplying a reasonable hourly rate by a reasonable number of hours expended on the tasks completed. *See Pinzon v. Paul Lent Mech. Sys., Inc.*, No. 11-CV-3384 (DRH) (WDW), 2012 WL 4174725, at *5 (E.D.N.Y. Aug. 21, 2012) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany,* 522 F.3d. 182, 187–90 (2d Cir. 2008)), *adopted by* 2012 WL 4174410

---

[10] Liquidated damages owed to CPF = $5,989.63 x 0.2 = $1,197.9

Liquidated damages owed to remaining Funds = $22,251 x 0.1 = $2,225.10

$1,197.93 + $2,225.10 = $3,423.03.

[11] Twenty percent of the unpaid ERISA contributions ($28,240.63) amounts to $5,648.13.

9

(Sept. 19, 2012). The requesting party bears the burden to demonstrate the reasonableness of the charged hourly rates and hours spent. *D & A Bus Co.*, 270 F. Supp. 3d at 617.

To determine whether the hourly rate is reasonable, courts consult the generally accepted rate in the district in which it sits. *D & A Bus Co.*, 270 F. Supp. 3d at 617–18. Courts in this District award hourly rates ranging from $300 to $450 per hour for partners. *Local 1922 Pension Fund v. Broadway Elec. Supply, Co.*, No. 19-CV-2344 (JS) (AKT), 2020 WL 1931635, at *13 (E.D.N.Y. Mar. 18, 2020) (collecting cases), *adopted* (Order dated 5/4/2020).

Courts assess the reasonableness of hours expended depending on the nature of the case. *See Trs. of Leather Goods, Handbags, & Novelty Workers' Union Loc. 1 Joint Ret. Fund v. Cent. Fur Storage Co.*, No. 18-CV-7224 (AMD) (RER), 2019 WL 3937132, at *13 (E.D.N.Y. Aug. 2, 2019), *adopted by* 2019 WL 3936676 (Aug. 20, 2019). The number of hours expended is unreasonable if the submitted billing records contain "excessive, redundant or otherwise unnecessary hours." *Gesualdi v. Fortunata Carting Inc.*, 5 F. Supp. 3d 262, 279 (E.D.N.Y. 2014) (adopting R. & R.) (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).

Plaintiffs' counsel, James M. Steinberg ("Steinberg"), seeks a total fee of $2,535 to compensate for 6.5 hours billed at the hourly rate of $390. (Steinberg Aff. ¶¶ 12–13; *see* Ex. J). Steinberg is a partner in the law firm of Brady McGuire & Steinberg, P.C., (*id.* ¶ 1), and has been "practicing in this field of law since February 1995," (*id.* ¶ 11). Thus, Steinberg's requested hourly rate is reasonable.

Steinberg has submitted sufficient documentation of the tasks completed, hours expended on each task, and dates the tasks were performed. (Ex. J). Upon careful review of the affidavit and records submitted by Steinberg, I find no excessive, redundant, or otherwise unnecessary hours.

10

Thus, the 6.5 hours expended were also reasonable. *See Annuity & Health & Welfare Funds of United Food & Commercial Workers Local 2013 v. S. Orange Fancy Food, LLC*, No. 19-CV-4192 (ARR) (RER), 2020 WL 5260540, at *5 (E.D.N.Y. Aug. 14, 2020) (finding that Steinberg reasonably billed 6.5 hours in similar case), *adopted by* 2020 WL 5259005 (Sept. 3, 2020). *But cf. Coastal Env't*, 2019 WL 5693916, at *11 (recommending "that Steinberg submit his contemporaneous billing records before an award of attorney's fees is granted").

Accordingly, I respectfully recommend that Steinberg be awarded $2,535.[12]

E. <u>Auditor's Fees</u>

Pursuant to the Trust Agreements, Genrus is responsible for "auditor's fees, if any, relating to the cost of any fee charged by the Fund's authorized representative who conducted an audit of the pertinent books and records." (Ex. D art. V, § 6 (amend. dated 3/13/2014); Ex. E art. VII, § 8 (amend. dated 3/13/2014); Ex. F art. V, § 6 (amend. dated 3/13/2014); Ex. G. art. IV, § 4.5(a)). Like attorney's fees, "requests for audit fees must be supported by records . . . sufficient to allow the court to determine the reasonableness of the audit costs." *Fortunata Carting*, 5 F. Supp. 3d at 282–83 (citation and quotation omitted). "Accordingly, the evidence supporting an audit fee request . . . must include, at minimum, some breakdown of the auditors' rates charged and hours expended." *Id.* (quoting *Trs. of Plumbers Loc. Union No. 1 Welfare Fund v. Axiom Plumbing & Heating Corp.*, No. 08-CV-116 (FB) (JMA), 2009 U.S. Dist. LEXIS 70436, at *11–13 (E.D.N.Y. Aug. 11, 2009) (recommending denying audit costs), *adopted by* 2009 U.S. Dist. LEXIS 70431 (Aug. 6, 2009)).

---

[12] $390/hour X 6.5 hours = $2,535

11

Plaintiffs' auditor, Schultheis & Panettieri, LLP is a public accounting firm. (Madeiras Aff. ¶ 1; *see* Chase Aff. ¶ 5). Madeiras states that "my firm charged Plaintiffs $5,283.40 in fees to conduct the audit procedures." (Madeiras Aff. ¶ 8). That amount represents 51.13 hours of work performed by "Staff," "Manager/Supervisor," and "Partner." (Ex. K). Madeiras does not assert that the amount charged was reasonable or identify the length of the audit and tasks conducted by each member of her firm. Plaintiffs provide no other information from which the Court can determine whether the rates charged and hours expended are reasonable.

The amount requested exceeds the range of reasonable audit fees typically awarded in similar cases. *See Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, & Skill Improvement & Safety Funds v. Kel-Tech Constr. Inc.*, No. 19-CV-2487 (ENV) (SJB), 2020 WL 6051097, at *8 (E.D.N.Y. Aug. 25, 2020) (awarding $1,027 in audit fees), *R. & R. adopted* (Order dated 10/13/2020); *Coastal Env't Grp.*, 2019 WL 5693916, at *12 (awarding $1,268.25; and collecting cases awarding audit fees ranging from $2,587.50 to $4,940). The Court finds no basis on which to infer that this case was necessarily more complex for the auditors. However, it would be unreasonable to deny all auditor's fees. *See Fortunata Carting*, 5 F. Supp. 3d at 283 ("[S]ome work was clearly conducted by the auditors and it would be unfair to entirely deny plaintiffs the costs of the audit."); *Trs. of Four Joint Boards Health & Welfare & Pension Funds v. Penn Plastics, Inc.*, 864 F. Supp. 342, 351 (S.D.N.Y. 1994) (reducing requested auditor's fees). Thus, I respectfully recommend $2,000 as reasonable auditor's fees for this case.

F. Costs

Pursuant to ERISA and the Trust Agreements, Genrus is responsible for costs Plaintiffs incurred to collect delinquent contributions. § 1132(g)(2)(D); (Ex. D art. V, § 6 (amend. dated

12

3/13/2014); Ex. E art. VII, § 8 (amend. dated 3/13/2014); Ex. F art. V, § 6 (amend. dated 3/13/2014); Ex. G. art. IV, § 4.5(e)). Plaintiffs request $489 in costs. (Steinberg Aff. ¶ 10(h)); Dkt. No. 9-1). This amount is supported by Plaintiffs' records, (Ex. L), and the Court's docket, (*see* Dkt. No. 1 ("filing fee $400, receipt number ANYEDC-13535636.")). Thus, I respectfully recommend that Plaintiffs be awarded $489 for litigation costs. *See Trs. of the Rd. Carriers Loc. 707 Pension Fund v. J.R.S. Trucking Servs., Inc.*, No. 15-CV-2444 (CBA) (RLM), 2015 WL 10487716, at *10 (E.D.N.Y. Nov. 10, 2015) (awarding filing fees and service fees because they were "plainly reasonable" (citation omitted)), *adopted by* 2016 WL 1064518 (Mar. 15, 2016).

G. Post-Judgment Interest

While Plaintiffs do not request post-judgment interest, they are "entitled to post-judgment interest on all money awards as a matter of right" at the rate set out in 28 U.S.C. § 1691. *Trs. of Plumbers Local Union No. 1 Welfare Fund v. Temperini Mech. Inc.*, No. 18-CV-2596 (AMD) (LB), 2020 WL 571680, at *3 (E.D.N.Y. Jan. 13, 2020), *adopted by* 2020 WL 565410 (Feb. 5, 2020). Therefore, Plaintiffs should be awarded post-judgment interest on all sums awarded from the date judgment is entered to the date of payment. *See id.*

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Your Honor grant Plaintiffs' motion for default judgment and award Plaintiffs $51,148.42 as follows: (1) $30,374.79 in unpaid contributions; (2) $12,326.60 in pre-judgment interest; (3) $3,423.03 in liquidated damages; (4) $2,535 in attorney's fees; (5) $489 in costs; and (6) $2,000 in auditor's fees. Plaintiffs should also be awarded additional pre-judgment interest calculated through the date that the Clerk of Court

enters final judgment and post-judgment interest on all sums awarded from the date judgment is entered to the date of payment.

Plaintiffs' counsel is hereby directed to serve copies of this Report and Recommendation upon Defendant by regular and certified mail and to file proof of service with the Clerk of the Court promptly thereafter. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Margo K. Brodie within fourteen days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED

/s/ Ramon E. Reyes, Jr.
Hon. Ramon E. Reyes, Jr., U.S.M.J

Dated:    August 16, 2021
          Brooklyn, New York